UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MONTAZ KENNEDY,

     Plaintiff,

v.

TERA JACKSON-DAVIS et al.,

     Defendants.

Case No. 24-11290
Honorable Laurie J. Michelson

---

**ORDER DENYING PLAINTIFF'S MOTION TO RECUSE [93], DENYING HIS MOTION FOR RECONSIDERATION [90], AND GRANTING IN PART HIS MOTION FOR EXTRA PAGES [91]**

---

In his motion to recuse this Court, *pro se* litigant Montaz Kennedy relies on the old adage "this is only the tip of the iceberg." (ECF No. 93, PageID.998.) The Court believes, however, based on its substantial efforts to try to help the parties resolve the case, that the more appropriate adage here is "no good deed goes unpunished."

While *pro se* pleadings are to be construed liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), self-represented litigants are not absolved from following the law, the Federal Rules of Civil Procedure, this District's Local Rules, and this Court's case management requirements. The Court has, at times, been lax in enforcing this requirement against Kennedy. But, as the present motion makes clear, that indulgence has been for naught.

The motion, relying on authority wholly irrelevant here,[1] fails to recite the governing law, let alone apply it.[2]  (*See generally*, ECF No. 93.) And it is equally devoid of any evidence to support the baseless accusation that the Court "harbors animosity, hatred, disgust, etc., towards Plaintiff Kennedy based on her political affiliation with the democratic party and Defendant Joceyln [Benson's] run for the position of Governor of the State of Michigan, as well as the current Democratic Governor Defendant Gretchen [Whitmer.]" (*Id.* at PageID.993–994.)

Thus, having no merit, Kennedy's motion for recusal is DENIED without the need for a hearing. *See* E.D. Mich. LR 7.1(f). Moreover, when Kennedy styles the motion to have the Court "forcefully removed" and, at the end, threatens the filing of a complaint for misconduct, the Court trusts that this is bluster from someone untrained in the law and not a conscious effort at impermissible intimidation.

## I.

On May 10, 2023, the Detroit Police Department towed an abandoned 2005 Ford Explorer. Weeks later, Montaz Kennedy, the owner of the vehicle, went to Detroit's 36th District Court to file a petition for a hearing to challenge the towing pursuant to Michigan Compiled Laws § 257.252a(6). After speaking with several

---

[1] Kennedy cites, for example, *Romer v. Evans*, 517 U.S. 620 (1996), a case striking down a state constitutional provision that discriminated based on sexual orientation under the equal protection clause, and *Bush v. Gore*, (*id.* at PageID.996), a case regarding state election procedures. 531 U.S. 98 (2000). Neither case constitutes "controlling precedent" on the present issue. (*See* ECF No. 93, PageID.994.)

[2] This is to say nothing of Kennedy's failure to comply with this Court's case management requirements and the local rules regarding concurrence (E.D. Mich. LR 7.1(a)).

clerks, Kennedy learned he could not file his petition without paying a $40 bond plus the amount of the towing and storage fees. But Kennedy could not afford those fees. Subsequently, on June 22, 2023, Kennedy's vehicle was sold by the Detroit Police Department at public auction. (ECF No. 36-2.)

A year later, Kennedy filed this *pro se* civil rights lawsuit under 42 U.S.C. § 1983 against Michigan Governor Gretchen Whitmer, Secretary of State Jocelyn Benson, and three named clerks of the 36th District Court and two "Jane Doe" clerks, alleging violations of his First and Fourteenth Amendment rights. (ECF Nos. 1, 31.) Kennedy argues that Michigan Compiled Laws § 257.252a is unconstitutional on its face and as applied to him because it prevented him from accessing the court in violation of the First Amendment. (ECF No. 31, PageID.201.) Similarly, Kennedy says that the statute discriminates against indigent persons in violation of the Fourteenth Amendment's equal protection clause and allows the state to seize property without a hearing in violation of the Fourteenth Amendment's due process clause. (*Id.*)

To remedy these alleged violations, Kennedy asks the Court to, among other things, issue an order for the Detroit police to find and return his car, order defendants to issue an executive order rescinding § 252.252a, and issue "a declaratory judgment" stating that the statute is unconstitutional. (ECF No. 31, PageID.209–213.)

In response, most of the named Defendants filed motions to dismiss. (*See, e.g.*, ECF Nos. 36, 47, 48.) On June 17, 2025, the Court granted the unopposed motions of

court clerks Rosco Harvey and Vanessa Jones on the grounds of quasi-judicial immunity. (ECF No. 57.) Subsequently, on June 26, 2025, and August 28, 2025, the Court held hearings on Governor Whitmer and Secretary of State Benson's motion to dismiss (ECF Nos. 59, 66).

At each hearing, the Court discussed the possibility of settlement with the parties at length. The Court believed that the parties were very close to reaching a final resolution that would involve steps being taken to seek an amendment to Michigan Compiled Law § 257.252a, as well as some compensation to Kennedy for the loss of his vehicle.

Ultimately, however, Kennedy expressed his desire to proceed with the litigation. This included requests by Kennedy to consolidate complaints, amend the complaint again, and multiple requests for more time to submit a reply brief in support of the latter. Having received rulings he disagrees with on these requests, Kennedy now seeks this Court's recusal. (ECF No. 93.)

## II.

First, the law. A judge must recuse when her "impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This does not mean that a judge must recuse whenever a frustrated litigant questions her partiality. The "conduct must be so extreme . . . that it displays a deep-seated favoritism or antagonism that would make fair judgment impossible." *United States v. Liggins*, 76 F.4th 500, 506 (6th Cir. 2023) (quotation omitted). A judge must also "proceed no further" when a party "files a

4

timely and sufficient affidavit" showing that the judge "has a personal bias or prejudice either against him" or for his opponent. 28 U.S.C. § 144.

As a threshold matter, Kennedy failed to submit an affidavit or a certificate of good faith. Nor is his brief an adequate substitute. "The § 144 affidavit must state factual averments with particularity as to time, person, place, and circumstances." *Scott v. Metro. Health Corp.*, 234 F. App'x 341, 352 (6th Cir. 2007). This Court has no affiliation with any of the parties, political or otherwise, and Kennedy's motion provides no evidence whatsoever to support his allegation to the contrary. Because Kennedy failed to comply with § 144's procedural requirements, the Court need not further reach the merits of his recusal motion under that section.

### III.

Now to the merits under § 455. Importantly, recusal is not based on the moving party's subjective view. *Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016). Rather, the standard is an objective one, requiring recusal only if "a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned." *Id.* at 616 (quoting *United States v. Adams*, 722 F.3d 788, 837 (6th Cir. 2013)). The moving party bears the burden to justify disqualification. *Id.*; *see also Consol. Rail Corp. v. Yashinsky,* 170 F.3d 591, 597 (6th Cir. 1999).

As indicated, Kennedy's subjective—and unfounded—belief that the Court harbors animosity toward him due to a "political affiliation with the democratic party" and Defendants Whitmer and Benson (ECF No. 93, PageID.993–994) does not

satisfy his burden. *See, e.g.*, *Jackson v. Benson*, No. 24-2006, 2025 U.S. App. LEXIS 15996, at *8 (6th Cir. June 17, 2025) (finding that "a judge's appointment by a particular president alone is insufficient to require recusal") (citing *Landingham v. Dep't of Just.*, No. 22-3968, 2024 U.S. App. LEXIS 525 (6th Cir. Jan 8, 2024); *Smith v. Caterpillar, Inc.*, No. 07-5312, 304 F. App'x 391, 396 (6th Cir. Dec. 19, 2008) (explaining that "subjective speculation alone is insufficient to form the basis of a judicial bias claim"). Nor do any of his arguments come close to revealing any such animosity or, for that matter, any reason for a reasonable person to question the Court's impartiality.

First, Kennedy accuses the Court of "issu[ing] a blanket denial of ALL future amended complaints regardless of whether the motion had merit or not." (ECF No. 93, PageID.994.) Tellingly, he cites no docket entry, because none exists. The Court issued no such order. At most, the Court issued a "preliminary order" advising the parties that "it is inclined to permit Kennedy to amend his complaint one final time, but only to the extent that his amended complaint does not re-add defendants who have already been dismissed from the case." (ECF No. 74.)

Second, Kennedy takes issue with the Court's decision to strike a recent stipulated order (ECF No. 89), docketed by Kennedy, to extend his time to file a reply to Defendants' opposition to his motion to file a third amended complaint. (ECF No. 93, PageID.995.) Because the Court had previously granted Kennedy's requests to extend his time to reply, the Court's decision to strike this order, says Kennedy, can only be understood as proof of the Court's "disdain" for him. (*Id.*)

The real reason for the Court's order (ECF No. 89) is less dramatic. Pursuant to Rule 12(a) of this District's Electronic Filing Policies and Procedures, all proposed orders must be submitted as a Word document via the proposed orders link under the Utilities section of CM/ECF—not entered directly on the docket. (ECF No. 89.) Thus, the Court struck the proposed stipulated order for an extension of time that Kennedy docketed (ECF No. 88) in contravention of this rule. The Court did not, however, preclude the parties from submitting the proposed stipulated order the proper way, i.e., through utilities. Kennedy is right that the Court did not strike the previous improperly filed proposed stipulated orders. But that was in deference to this *pro se* litigant, not out of antagonism toward him.

Moreover, on October 14, 2025, Kennedy filed a motion to consolidate his second and third amended complaints. (ECF No. 72.) Thereafter, the Court entered an Order explaining that there was no "third" amended complaint with which the second amended complaint could be "consolidated" and that it was not procedurally proper to consolidate complaints. (ECF No. 74.) Recognizing Kennedy's *pro se* status, however, and construing his motion liberally, the Court treated it as a renewed motion for leave to file a third amended complaint. (*Id.*) Defendants opposed the motion. (ECF No. 79.) The Court granted Kennedy *numerous* extensions of time to file a reply. (*See, e.g.*, ECF Nos. 82, 83, 84.) When he sought yet another (ECF No. 86), the Court again granted it but put the parties on notice that "was the final extension the Court will grant in this motion." (ECF No. 87.) In other words, the Court granted Kennedy four extensions of time to file a *reply* brief on a motion to amend the

7

complaint and indicated there would not be a fifth.[3] Even for a *pro se* litigant, filing a reply brief in support of a motion to amend a complaint does not require more than two months. So while the Court's decision to strike Kennedy's most recent effort to extend his time to respond was based on procedural grounds (Kennedy's non-compliance with local rules), outright denial of a *fifth* request for an extension would have been proper, in any event.

Third, Kennedy claims the Court terminated Defendant Tera Jackson-Davis, the Director of the 36th District Court, from the case "solely based on [her] affiliation to judge Michelson's Democratic cronies." (ECF No. 93, PageID.997.) Once again, Kennedy cites nothing in support. And once again that is because no such termination occurred. The Court will note, however, that the prior court clerks were dismissed on quasi-judicial immunity grounds such that this defense might well apply to Jackson-Davis.

Sticking with his refrain of political favoritism, Kennedy next complains about the dismissal of those court clerks, Harvey and Jones. First, he does not believe Jones was served with the complaint and thus, was not under the jurisdiction of the Court. If Kennedy never served Jones, the Court is hard-pressed to see how he is prejudiced by her absence from the case. More significant, though, the U.S. Marshal acknowledged service of process documents for all named defendants, including Vanessa Jones. (ECF No. 19.) While there is no docketed proof of service for Jones,

---

[3] Shockingly, Kennedy has now filed a motion for leave to file a 43-page reply brief, i.e., 36 pages over the limit. (ECF No. 91.) That motion is GRANTED IN PART. Kennedy may file a reply brief that does not exceed 14 pages, i.e., double the limit.

an attorney appeared for her on January 28, 2025 (ECF No. 45), and, that same day, filed a motion to dismiss in lieu of an answer to the complaint (ECF No. 47) that she must have received. At no time did Kennedy challenge the filing on jurisdictional grounds.

Kennedy's challenge to Harvey's dismissal fares no better. This Court, says Kennedy, in its zeal to show political favoritism, disregarded his attempt to default Harvey. (ECF No. 93, PageID.998.) Kennedy is correct on one point. The Court did not address his April 17, 2025, request for clerk's entry of default. But as the title suggests, entry of default is the responsibility of the clerk's office, not the district judge. Just as significant, the Court was aware, from reviewing the affidavit for default, that Kennedy "signed under penalty of perjury" that he served Harvey and that Harvey "failed to plead or otherwise defend in accordance with Fed. R. Civ. P. 12." (ECF No. 53.) But by April 8, 2025, Kennedy was aware that almost three months earlier, on January 28, 2025, Harvey had filed a motion to dismiss under Rule 12(b)(6). (ECF No. 48.) Because that was the date Kennedy filed a motion seeking additional time to respond to the motion to dismiss that had apparently not been served on him. (ECF No. 51.) On April 10, 2025, the Court granted Kennedy's request for more time and served the order on him. (ECF No. 52; Apr. 10, 2025, Certificate of Service.) So Kennedy's April 17, 2025, request for default, when he knew Harvey had filed a motion to dismiss, is a head-scratcher. But, once again belying his claim of antagonism, Kennedy is fortunate that all this Court did was ignore his untruthful affidavit.

In short, virtually all of Kennedy's complaints about the Court, and the essence of his request for recusal, revolve around the Court's rulings. And the law is clear that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Given that Kennedy has "done nothing more than make conclusory allegations" that the Court is biased and prejudiced against him, *United States v. Sypher*, 684 F.3d 622, 628 (6th Cir. 2012), there is no basis to grant his recusal motion.

## IV.

For these reasons, Kennedy's motion for recusal (ECF No. 93) is DENIED. So too is his motion for reconsideration of the Court's order striking his improperly docketed proposed stipulated order (ECF No. 90). As discussed above, this District's rules do not permit the docketing of proposed orders. There was no error of fact or law in the Court's order. *See* E.D. Mich. LR 7.1(h). Thus, there is no basis for the Court to reconsider its ruling. Lastly, the Court will exercise its discretion to allow Kennedy to file a 14-page reply brief in support of his motion to file a third amended complaint. Thus, his motion to extend the page limit is GRANTED IN PART AND DENIED IN PART.

IT IS SO ORDERED.

Dated: February 17, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE

10